IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

      v.                                           Criminal No. 3:21cr34 (DJN)

MALIK SALAAM MUHAMMAD,
    *a/k/a* Michael Christian Pickett,
    Defendant.

**MEMORANDUM OPINION**
**(Denying Motion to Continue)**

This matter comes before the Court on Defendant Malik Salaam Muhammad's, also known as Michael Christian Pickett, ("Defendant") Motion to Continue, moving to continue his jury trial until after the end of the Covid-19 pandemic to protect his Sixth Amendment jury trial rights. ("Mot. to Continue" at 1 (ECF No. 27).) For the reasons set forth below, the Court hereby DENIES the Motion to Continue. (ECF No. 27.)

## I.    BACKGROUND

In April 2021, a federal grand jury returned a six-count indictment charging Defendant with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count One), health care fraud in violation of 18 U.S.C. § 1347 (Counts Two through Four), and aggravated identity theft in violation of 18 U.S.C. § 1028A (Counts Five and Six).

Defendant has a Ph.D in clinical psychology and worked as a licensed clinical psychologist in several states, including Virginia. (Indictment ¶ 12.) The indictment alleges that from July 2015 through July 2017, Defendant conspired with "Conspirator 1" in the Eastern District of Virginia and elsewhere to bill the Virginia Medical Assistance Program ("Virginia Medicaid") for outpatient psychotherapy services that Defendant never provided. (Indictment

¶¶ 1, 18-19.) Defendant allegedly submitted at least $332,369.49 in psychotherapy and psychotherapy-related claims for reimbursement to Virginia Medicaid for services that did not occur. (Indictment ¶ 41.)

Defendant has now moved to continue his trial, arguing that the pandemic has disproportionately impacted African Americans, Hispanics and elderly Americans, resulting in the underrepresentation of these groups in jury venires. (Mot. to Continue ¶ 3.) He further asserts that "economically vulnerable" jurors may be struck, which would "skew the jury pool for Sixth Amendment purposes," because these jurors are "more likely to be Black, American and/or elderly."[1] (Mot. to Continue ¶ 7.) He also argues that conducting jury selection virtually or requiring attorneys and potential jurors to wear face masks "eliminates the face-to-face element" of jury selection and will unduly interfere with the striking process. (Mot. to Continue ¶ 4.) Additionally, he argues that the Court will have to excuse jurors with health concerns for cause, which will require these jurors to reveal personal medical information. (Mot. to Continue ¶ 5.) According to Defendant, jurors with health concerns may feel "threatened or uncomfortable" while serving on a jury during the pandemic, which could interfere with their judgment. (Mot. to Continue. ¶ 6.) Ironically, although he asks to delay his trial in the instant Motion, Defendant has also contemporaneously filed a Motion to Dismiss based on the Government's alleged preindictment delay, arguing in part that witnesses' memories may fade as time passes between the alleged crimes and trial. (ECF No. 28.)

On September 20, 2021, the Government responded to this Motion. (Resp. of the United States in Opp. to Def.'s Mot. to Continue ("Govt.'s Resp.") (ECF No. 30).) On September 29,

---

[1] The Court cannot determine what Defendant means by this assertion. The Court assumes that Defendant intended to refer to "Black Americans and/or the elderly."

2

2021, the Court held a hearing on both the Motions to Dismiss and to Continue. During the hearing, Defendant produced no evidence in support of his position.

## II. STANDARD OF REVIEW AND ANALYSIS

The Court has broad discretion to deny a motion for a continuance. *United States v. Copeland*, 707 F.3d 522, 531 (4th Cir. 2013). A court of appeals will review that decision only for abuse of that discretion. *Id.* "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Rather, the trial judge must consider the circumstances at the time of the request and the reasons that a party proffers in support of the request. A district court abuses its discretion when it denies a continuance based on "a myopic insistence upon expeditiousness in the face of a justifiable request for delay.'" *Id.*

Defendant failed to provide a modicum of evidence to support his position during briefing and the September 29, 2021 hearing. Defendant argued during the hearing the pandemic has disproportionately affected African Americans but adduced no evidence to support his assertion that this disproportionate affect has reduced African American representation in jury venires or on juries. He offers no evidence to indicate that the pandemic will prevent him from vindicating his right to a jury drawn from a fair cross-section of his community. Further, he ignores the precautions that the Court and the Eastern District of Virginia ("the District") have implemented to protect jurors, litigants and the public during the pandemic. For these reasons, the Court will deny his Motion to Continue. (ECF No. 27.)

First, as the Government correctly asserts, Defendant has not shown a violation of the Sixth Amendment, which require that venires represent a "fair cross section" of the community.

3

*See Berghuis v. Smith*, 559 U.S. 314, 319 (2010). To establish a prima facie violation of the fair-cross-section requirement, the defendant must prove:

> (1) that the group alleged to be excluded is a "distinctive" group in the community;
>
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
>
> (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

To prevail, Defendant must demonstrate the underrepresentation of a particular group both generally and in his own venire "due to [the] systematic exclusion [of that group] in the jury-selection process." *Id.* at 366. *Duren* claims typically require "very detailed information" and opinions from expert witnesses to demonstrate underrepresentation. *Faulds v. United States*, 2013 WL 5460631, at *17 (C.D. Ill. Oct. 1, 2013), *aff'd*, 617 F. App'x 581 (7th Cir. 2015). Here, Defendant merely makes bare allegations regarding the relationship between Covid-19 and the demographic composition of venires. (Mot. to Continue ¶¶ 3, 7-8.) He did not supplement these claims with evidence during the hearing on his Motion. For that reason, he cannot make out a *prima facie* case of underrepresentation in violation of the Fifth and Sixth Amendments.

In fact, the undersigned has anecdotally observed that since the pandemic began in 2020, jury trials have become markedly more racially diverse. Data from the Jury Clerk shows that in the Richmond Division, from September 2018 to December 2019, white people comprised 77% of juries, and non-white people comprised 23%. From January 2020 to September 2021, the percentage of white people on juries fell to 62%, and the percentage of non-white people increased to 38%. While the reason for this shift remains unclear, these data suggest that white

people have been excused from jury service more often than minorities since the pandemic began.

Likewise, data from the Newport News Division Jury Clerk indicates that in the three trials over which the undersigned presided in Newport News during the pandemic, a higher percentage of black people served on the juries than the percentage of black people on the qualified juror list for that Division.[2] Thus, not only does Defendant lack data to prove systematic underrepresentation in jury venires, but the undersigned's observations and the pertinent data also contradict his assertions.

Second, the Court sees no reason to continue the trial because of Defendant's unfounded suggestion that the pandemic will interfere with jury selection and deliberation. Clinical trials have shown that available Covid-19 vaccines provide strong protection against the highly contagious delta variant. *Do COVID-19 Vaccines Protect Against the Variants?* Mayo Clinic (last visited Sept. 27, 2021).[3] In the Richmond area, 54% of the total population is fully vaccinated, and 60% has received at least one dose.[4] *Vaccine Distribution Progress: Weekly*

---

[2] These include *United States v. Lopez-Alvarado* (4:20cr69), *United States v. Burden-El Bey* (4:20cr17), and *United States v. Archible* (4:20cr15).

[3] Available at https://www.mayoclinic.org/coronavirus-covid-19/covid-variant-vaccine.

[4] The Government rightly highlights that children younger than twelve cannot receive a Covid-19 vaccine yet. (Govt.'s Resp. at 4 n.5.); *see* Janet Woodcock and Peter Marks, *FDA Will Follow the Science on COVID-19 Vaccines for Young Children*, U.S. Food and Drug Admin. (Sept. 10, 2021), https://www.fda.gov/news-events/press-announcements/fda-will-follow-science-covid-19-vaccines-young-children (stating that children younger than twelve cannot yet receive the Covid-19 vaccine). However, the total population of the Richmond area that appears on the Virginia Department of Health website includes children younger than twelve. *Vaccine Distribution Progress, supra.* Subtracting the number of children younger than twelve from the total population yields the approximate number of vaccine-eligible individuals in the Richmond area, notwithstanding those who cannot receive the vaccine for other reasons, such as allergies. Thus, dividing the total number of fully and partially vaccinated individuals in the Richmond area by the total number of vaccine-eligible individuals would result in larger percentages of

*Vaccine Distribution*, Va. Dep't of Health (Sept. 6, 2021).[5] Although these vaccines have not eradicated Covid-19, they certainly reduce the risk the disease poses. *United States v. Tagliaferro*, 2021 WL 1225990, at *5 (S.D.N.Y. Mar. 31, 2021) (denying the defendant's motion to adjourn his trial despite lower vaccination rates than those in the Richmond area).

Moreover, this Court does not take lightly its duty to protect the public, witnesses, jurors, counsel and litigants from the spread of Covid-19. *See* General Order No. 2021-12 at 2, *In re Court Operations Under the Exigent Circumstances Created by the Outbreak of Coronavirus Disease 2019 (COVID-19)* (E.D. Va. Aug. 13, 2021) (explaining purpose of recent testing and vaccination policies and protocols in the District)). Precisely for that reason, the Court ensured that Defendant and counsel for both parties received the Covid-19 vaccine, and that the parties agreed to strike unvaccinated prospective jurors for cause. (Order (ECF No. 19); Def.'s Position Regarding Vaccination (ECF No. 21).) The undersigned will also excuse any prospective juror showing reluctance to serve or an inability to concentrate on the evidence due to their fear of infection. During voir dire, prospective jurors will remove their masks during individual questioning so that the parties have the opportunity to see their faces before exercising their strikes. To minimize the risk of infection during this process, the prospective jurors will sit in the witness box behind plexiglass.

Defendant also overlooks the other District-wide safeguards that exist to protect jurors' health and give them the peace of mind to focus on their responsibilities during trial. The District has implemented precautions such as requiring court employees and contractors to wear

---

vaccinated individuals than those listed above. Consequently, the percentages noted above underestimate the proportion of vaccine-eligible individuals who have gotten one or both doses of a vaccine. (Govt.'s Resp. at 4 n.5.)

[5] Available at https://www.vdh.virginia.gov/richmond-city/vaccine-distribution-progress/.

6

a mask while inside District courthouses and either receive a Covid-19 vaccine or undergo twice-weekly testing. General Order No. 2021-21 at 4. Chief Judge Davis recently expanded this mandate to counsel admitted to practice in the District and their employees who enter courthouses and facilities. *See* General Order No. 2021-13 at 2, *In re Court Operations Under the Exigent Circumstances Created by the Outbreak of Coronavirus Disease 2019 (COVID-19): Vaccination & Testing Policy for Admitted Counsel and Employees of Their Offices* (E.D. Va. Aug. 21, 2021). All individuals who enter District courthouses — regardless of vaccination status — must wear masks inside indoor public areas and public-facing areas in District courthouses. General Order No. 2021-11 at 4. Whenever possible, individuals must remain six feet apart, and jury proceedings require six feet of distancing. *See* General Order 2021-11 at 4-5.

With the current or prior versions of these thoughtful and extensive precautions in place, the undersigned has successfully presided over six jury trials in the Richmond and Newport News Divisions during the pandemic. *United States v. Lopez-Alvarado* (4:20cr69); *United States v. Robertson*, 4:18cr27; *United States v. Hooper* (4:20cr18); *United States v. Burden-El Bey* (4:20cr17); *United States v. Archible* (4:20cr15); *Snoeyenbos v. Curtis* (3:19cv377). Defendant offers no compelling reason why the Court should treat his case any differently.

As the Southern District of New York put it, "the COVID-19 uncertainties that pervade our society are reasons to accept the status quo as the new normal and move ahead with trial now, as opposed to putting the trial off indefinitely and wishing in earnest for a better future." *Tagliaferro*, at *6. Unfortunately, no one can predict when the pandemic will end. As a result, in asking to continue his trial until the end of the pandemic, Defendant asks for an indefinite continuance. The Court will not deny the public its interest in a speedy trial. *See United States v. Henry*, 538 F.3d 300, 303 (4th Cir. 2008) (noting that, under the Speedy Trial Act, a court may

7

exclude certain delays from the seventy-day period to commence trial after the Government files an indictment, including those delays where the court has found that "the ends of justice served by . . . granting . . . [a] continuance outweigh the best interests of the public and the defendant in a speedy trial" (quoting § 3161(h)(8)(A)).

Defendant has criticized the Government for the preindictment delay in his case, but also asks that the Court push out his trial even further. He cannot have it both ways. The Court hereby DENIES his Motion to Continue. (ECF No. 27.)

An appropriate Order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: September 29, 2021