IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

    v.                                                  Criminal No. 3:21cr34 (DJN)

MALIK SALAAM MUHAMMAD
    *a/k/a* Michael Christian Pickett,
    Defendant.

**MEMORANDUM OPINION**
**(Denying Motion to Dismiss)**

This matter comes before the Court on Defendant Malik Salaam Muhammad's, also known as Michael Christian Pickett, ("Defendant") Motion to Dismiss, moving to dismiss the Indictment (ECF No. 2) based on the Government's preindictment delay ("Mot. to Dismiss") (ECF No. 28).) For the reasons set forth below, the Court hereby DENIES the Motion to Dismiss. (ECF No. 28.)

### I.    BACKGROUND

In April 2021, a federal grand jury returned a six-count indictment charging Defendant with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count One), health care fraud in violation of 18 U.S.C. § 1347 (Counts Two through Four), and aggravated identity theft in violation of 18 U.S.C. § 1028A (Counts Five and Six).

Defendant had a Ph.D in clinical psychology and worked as a licensed clinical psychologist in several states, including Virginia. (Indictment ¶ 12.) The indictment alleges that from July 2015 through July 2017, Defendant conspired with "Conspirator 1" in the Eastern District of Virginia and elsewhere to bill the Virginia Medical Assistance Program ("Virginia Medicaid") for outpatient psychotherapy services that Defendant never provided. (Indictment

¶¶ 1, 18-19.) Defendant allegedly submitted at least $332,369.49 in psychotherapy and psychotherapy-related claims for reimbursement to Virginia Medicaid for services that did not occur. (Indictment ¶ 41.)

Defendant has now moved to dismiss these charges based upon the purported five-year delay[1] between the alleged commission of the crimes and the indictment, arguing that the delay violates his Fifth Amendment due process rights. (Mot. to Dismiss ¶¶ 4-9.) Defendant asserts that this delay prejudices him, because it will interfere with witness's recollections of relevant events, and because the Covid-19 pandemic will prevent him from vindicating his Sixth Amendment rights. (Mot. to Dismiss ¶¶ 7-9.)

Specifically, in support of these arguments, Defendant refers to his contemporaneously filed Motion to Continue.[2] (Mot. to Dismiss ¶ 6.) In the Motion to Continue, Defendant requests to continue his trial, because of potential violations of his Sixth Amendment jury trial rights that could occur due to the pandemic. ("Mot. to Continue" ¶ 6 (ECF No. 27).) Defendant speculates about several potential problems with jury selection in his Motion to Continue, including the

---

[1]   Defendant argues that the Government delayed indicating him for five years, which appears to inaccurately calculate the preindictment timeline. (Mot. to Dismiss ¶¶ 7-8.) The indictment alleges that Defendant conspired with Conspirator 1 to commit health care fraud from approximately July 2015 to January 20, 2017. (Indictment ¶ 18.) On January 20, 2017, Conspirator 1 began to cooperate with law enforcement. (Indictment ¶ 43.) From January 21, 2017, to October 13, 2017, Defendant allegedly continued to bill Virginia Medicaid for services he had not performed. (Indictment ¶ 49.) On April 21, 2021, the Government filed the indictment, four years and three months after the conclusion of the alleged conspiracy to commit health care fraud and three years and six months after the conclusion of Defendant's alleged continuation of the health care fraud scheme. (Indictment at 1.) Thus, the preindictment delay was shorter than Defendant asserts.

[2]   Defendant cites his "Defendant's Motion to Dismiss this day filed" in support of his argument that Covid-19 threatens his Sixth Amendment rights. (Mot. to Dismiss ¶ 6.) The Court assumes that Defendant did not intend to refer to his Motion to Dismiss in his Motion to Dismiss and, instead, meant to cite his Motion to Continue, which goes into greater detail about how the pandemic allegedly affects his Sixth Amendment rights than his Motion to Dismiss. (Mot. to Continue ¶¶ 1-8 (ECF No. 27).)

2

requirement that jurors and attorneys wear masks, the fact that jurors must disclose information about their health, and the possibility that the pandemic will result in the excusal of jurors with health concerns and financial difficulties, which might skew jury selection in the Government's favor. (Mot. to Continue ¶¶ 4-8.)

In his Motion to Dismiss, Defendant contends that the preindictment delay violated due process, because Defendant "[was] undoubtedly prejudiced" by the delay and that the Government could not reasonably justify the delay. (Mot. to Dismiss. ¶¶ 5, 8.) On September 20, 2021, the Government responded to the Motions to Dismiss and to Continue. (ECF Nos. 30, 31.) On September 29, 2021, the Court held a hearing on these Motions. During the hearing, Defendant produced no evidence in support of his position.

## II.     STANDARD OF REVIEW

Under the Fifth Amendment, a court must dismiss an indictment when the government's preindictment delay substantially prejudiced a defendant's right to a fair trial and the government intentionally delayed "to gain tactical advantage over the accused." *United States v. Shealey*, 641 F.3d 627, 633 (4th Cir. 2011) (quoting *United States v. Marion*, 404 U.S. 307, 324 (1971)). The Fourth Circuit conducts a two-part inquiry to determine whether a preindictment delay violated due process. *United States v. Automated Med. Labs.*, 770 F.2d 399, 403 (4th Cir. 1985). "First, a court must assess whether the defendant has suffered actual prejudice." *Id.* Prejudice exists when the defendant "was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." *Jones v. Angelone*, 94 F.3d 900, 907 (4th Cir. 1996)).

Second, if a defendant demonstrates actual prejudice, the court must "consider the Government's reasons for the delay, balancing the prejudice to the defendant with the

3

Government's justification for delay." *Automated Med. Labs*, 770 F.2d at 403-04. Under this prong, the court considers whether the preindictment delay violated "those "fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.'" *United States v. Lovasco*, 431 U.S. 783, 790 (1977) (citations omitted). As explained below, Defendant's motion fails both prongs. First, Defendant has not demonstrated any actual prejudice resulting from the preindictment delay in this case. Second, even if actual prejudice occurred, the Government can easily justify its delay. Consequently, the Court will deny Defendant's Motion to Dismiss (ECF No. 28).

A. **Actual Prejudice**

Defendant has not shown actual, substantial prejudice due to the preindictment delay. A defendant must "show actual prejudice, as opposed to mere speculative prejudice." *Jones*, 94 F.3d at 907 (first citing *Marion*, 404 U.S. at 325-26; and then citing *Lovasco*, 431 U.S. at 789-90). "Speculative or conclusory claims alleging 'possible' prejudice as a result of the passage of time are insufficient." *United States v. Kalbflesh*, 621 F. App'x 157, 158-59 (4th Cir. 2015) (citing *United States v. Bartlett*, 794 F.2d 1285, 1290 (8th Cir. 1986)). As the Fourth Circuit has emphasized, a defendant bears a "heavy burden" on this prong. *Jones*, 94 F.3d at 907. The Government correctly points out that Defendant merely theorizes how the pandemic might affect the jury pool without providing any supporting evidence. (Resp. of the United States in Opp. to Def.'s Mot. to Dismiss ("Govt.'s Resp.") at 4 (ECF No. 31).) Defendant offers no proof that the pandemic will affect the jury pool. This mere speculation falls well short of meeting Defendant's heavy burden.

Furthermore, Defendant cannot prove actual prejudice "through generalized claims of [witnesses'] memory loss." *United States v. Lynch*, 1995 WL 325670, at *3 (4th Cir. June 1,

4

1995) (quoting *United States v. Scott*, 795 F.2d 1245, 1249 (5th Cir. 1986)); *United States v. Wright*, 343 F.3d 849, 860 (6th Cir. 2003) ("[L]oss of memory is an insufficient reason to establish prejudice." (citing *Payne v. Rees*, 738 F.2d 118, 121-22 (6th Cir. 1984)); *United States v. Nelson*, 530 F. Supp. 2d 719, 727 (D. Md. 2008) ("[T]he loss or impairment of memories does not amount to actual prejudice for purposes of the Due Process Clause." (citing *Lynch*, 1995 WL 325670 at *3)). Defendant simply suggests that the delay will weaken the Government's case against him, which partly relies on witness recollection. (Mot. to Dismiss ¶ 7.) However, he does not identify any witnesses who have experienced memory loss or impairment. Further, presumably, witnesses comprise only one part of the Government's case, and any erosion of memory will not amount to substantial prejudice towards Defendant. For these reasons, Defendant's claim of prejudice fails.

B.  **The Government's Justification**

Even if Defendant had proven actual prejudice, Defendant still could not show that the Government's delay in indicting him had developed into an unreasonable one. When balanced against the negligible prejudice in this case, the Government's explanation for the delay does not contravene any "fundamental conceptions of justice" or "the community's sense of fair play and decency." *Lovasco*, 431 U.S. at 790 (citations omitted); *Jones*, 94 F.3d at 910. "[I]nvestigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused,' precisely because investigative delay is not so one-sided." *Lovasco*, 431 U.S. at 795 (citation omitted). When a prosecutor seeks to indict only after he ensures that probable cause exists and that he can prove guilt beyond a reasonable doubt, he in fact complies with these standards of fair play and decency. *Id.* And "[p]enalizing prosecutors who defer action for these reasons would subordinate the goal of 'orderly expedition' to that of

5

'mere speed.'" *Lovasco*, 431 U.S. at 795-96 (quoting *Smith v. United States*, 360 U.S. 1, 10 (1959)).

Here, the Government investigated at least two health care fraud schemes related to Virginia and North Carolina Medicaid, spawning three related indictments and informations in the Richmond Division of the Eastern District of Virginia. (Govt.'s Resp. at 5-6 (citing *United States v. Garcia-Samuels*, 3:20cr72; *United States v. Jarman*, 3:20cr56; *United States v. Burkhead*, 3:20cr50).) Defendant does not offer any evidence to suggest that the Government waited to indict in bad faith. As Defendant himself notes, the Government could not have foreseen the pandemic and its implications for criminal jury trials. (Mot. to Dismiss ¶ 8.) Rather, it appears that the preindictment delay resulted in large part from the complexity of the investigation, not from any intentionally dilatory strategies on the Government's part. *See United States v. Uribe-Rios*, 558 F.3d 347, 358 (4th Cir. 2009) ("If delay results from a protracted investigation that was nevertheless conducted in good faith . . . 'to prosecute a defendant following investigative delay does not deprive him of due process . . . .'" (quoting *Lovasco*, 431 U.S. at 796)).

Importantly, the preindictment delay also stemmed from Defendant's own activities. The Government served a Grand Jury subpoena for documents on Defendant in October 2017. (Govt.'s Resp. at 6.) Defendant then retained an attorney and consented to an interview in February 2018. (Govt.'s Resp. at 6.) The next month, he retained another attorney and participated in an interview pursuant to a proffer agreement with the Government in March 2018. (Govt.'s Resp. at 6.) After that meeting, the Government believed that Defendant "would resolve this matter and cooperate in additional investigations." (Govt.'s Resp. at 6.) The Government continued to investigate and then filed three more indictments and informations in

the Eastern District of Virginia, as noted above. (Govt.'s Resp. at 6.) In June 2020, the Government gave Defendant draft plea agreement documents. (Govt.'s Resp. at 6.) Defendant's attorney then withdrew, and the Government provided Defendant with a target letter. (Govt.'s Resp. at 6.) At that point, the Court appointed Defendant's current counsel. (Govt.'s Resp. at 6.) The Government provided a reverse proffer to Defendant's attorney, then to defendant with his attorney. (Govt.'s Resp. at 6.) In October 2020, Defendant's counsel informed the Government that Defendant would not resolve the matter.[3] (Govt.'s Resp. at 6.) Over the course of several years, the Government put forth a diligent effort to resolve the case with Defendant. No evidence indicates that the preindictment delay served as an attempt "to gain a tactical advantage over the accused." *Marion*, 404 U.S. at 324.

Moreover, the Government filed an indictment within the five-year statute of limitations pursuant to 18 U.S.C. § 3282(a). Statutes of limitations provide "the primary guarantee against bringing overly stale criminal charges." *Id.* at 322 (quoting *United States v. Ewell*, 386 U.S. 116, 122 (1966)). These statutes balance defendants' interests in the timely administration of justice and their ability to adequately mount a defense against the state's interest in protecting the public. *Id.* (quoting *Pub. Schs. v. Walker*, 76 U.S. 282, 288 (1870)). The Government abided by the statute of limitations, further demonstrating its lack of bad faith. For these reasons, the Government had legitimate reasons for its preindictment delay in this case. Defendant's due process claim must fail.[4]

---

[3] The Government's Response states that Defendant's counsel informed the Government that the Defendant would not resolve the matter in October 2021. (Govt.'s Resp. at 6.) The Court takes the Government to mean October 2020.

[4] The Government argues in its Response that the Fourth Circuit's two-part balancing test does not square with the test that the Supreme Court has established and that the majority of other circuits follow. (Govt.'s Resp. at 2-3 n.1.) The Supreme Court and all other circuits except

7

## IV. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendant's Motion to Dismiss (ECF No. 28).

An appropriate Order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: September 29, 2021

---

the Fourth and Ninth Circuits have held that a defendant challenging the government's preindictment delay under the Fifth Amendment Due Process Clause must show actual substantial prejudice and "that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him." *United States v. Gouveia*, 467 U.S. 180, 192 (1984); *see, e.g.*, *United States v. Gayden*, 977 F.3d 1146, 1150-51 (11th Cir. 2020) (on second prong, defendant must show intentional delay or other bad faith by the government); *United States v. Scully*, 951 F.3d 656, 668-69 (5th Cir. 2020) (same); *United States v. Irizarry-Colón*, 848 F.3d 61, 70-71 (1st Cir. 2017) (same); *United States v. Staton*, 605 Fed. App'x 110, 113 (3d Cir. 2015) (same); *United States v. Mitchell*, 558 Fed. App'x 831, 833 (10th Cir. 2014) (same); *United States v. Ross*, 703 F.3d 856, 876 (6th Cir. 2012) (same); *United States v. Jackson*, 446 F.3d 847, 849 (8th Cir. 2006) (same); *United States v. Alameh*, 341 F.3d 167, 176 (2d Cir. 2003) (same); *United States v. Sowa*, 34 F.3d 447, 450 (7th Cir. 1994). *But see Jones*, 94 F.3d at 910 (holding that court must balance prejudice to defendant against the state's reasons for the delay); *United States v. Valentine*, 783 F.2d 1413, 1416 (9th Cir. 1986) (holding that on the second prong, the court balances the length of the delay against the government's reasons for the delay).

The Fourth Circuit's precedents bind this Court, so the Court will follow the Fourth Circuit's balancing test. *See* 18 James Wm. Moore et al., Moore's Fed. Practice § 134.02[2] (Matthew Bender 3d ed. 2021) ("[T]he district courts in a circuit owe obedience to a decision of the court of appeals in that circuit and ordinarily must follow it until the court of appeals overrules it.") Because defendants can satisfy the Fourth Circuit's balancing test more easily than the majority test, even if the Court elected to apply the majority test, the Government would prevail. Under the majority test, Defendant has not satisfied his burden of demonstrating that the preindictment delay resulted from the Government's bad faith.