IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA

v.                                                               Criminal No. 3:21cr34 (DJN)

MALIK SALAAM MUHAMMAD,
    Petitioner.

**MEMORANDUM OPINION**

Malik Salaam Muhammad ("Defendant" or "Muhammad"), a federal inmate proceeding

*pro se*, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.

("§ 2255 Motion," ECF No. 77.)  For the reasons set forth below, the Court will DENY the

§ 2255 Motion.

**I.    CLAIMS AND PROCEDURAL HISTORY FOR CLAIM ONE**

**A.    Muhammad's Claims**

In his § 2255 Motion, Muhammad contends that he stands entitled to relief on the

following grounds:[1]

| | |
|---|---|
| Claim One: | "Ineffective assistance of counsel - failure to file an appeal. Counsel failed to file an appeal when requested to do so with regards to the sentencing enhancement, as well as the one (1) point reduction for accepting responsibility." (ECF No. 77 at 4.) |
| Claim Two: | "Ineffective assistance of counsel - counsel failed to object to the prosecutor's breach of the Plea Agreement." (*Id.* at 5.) |
| Claim Three: | "Ineffective assistance of counsel - counsel failed to investigate." (*Id.* at 7.) |

---

[1]    The Court corrects the capitalization, spelling and punctuation in the quotations from the parties' submissions.  The Court also omits any emphasis used by the parties in the quotations from the parties' submissions.  The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system.

Claim Four:    "Ineffective assistance of counsel - failure to file a motion to suppress recorded wire communications." (*Id.* at 8.)

Claim Five:    "Denial of effective assistance of counsel - counsel failed to introduce mitigating facts." (ECF No. 78, at 3.)

Claim Six:    "Denial of effective assistance of counsel - counsel failed to investigate loss amount." (*Id.*)

Claim Seven:    "Prosecutorial misconduct - breach of the Plea Agreement." (*Id.*)

Claim Eight:    "Prosecutorial misconduct - the Government failed to disclose that co-conspirator was a government informant." (*Id.*)

Claim Nine:    "Abuse of discretion (District Court) - restitution order improper." (*Id.*)

**B.    Expansion of the Record**

By Memorandum Order entered February 6, 2023, the Court ordered that the record be expanded with respect to Claim One. The Court explained as follows:

An attorney's failure to file a requested appeal is *per se* ineffective assistance of counsel. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483–86 (2000). The United States Court of Appeals for the Fourth Circuit has explained that "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).

In support of Ground One, Petitioner vaguely suggests that he requested his attorney to file an appeal, and that counsel "had a[n] obligation to raise these issues during the appeal process whether he deemed the issues had merit or not." (ECF No. 78, at 2.) Petitioner provides little more than the legal standard for an ineffective assistance claim in his submissions. Accordingly, the Court ORDERS Petitioner to file the following submissions, within fourteen (14) days of the entry hereof:

1.    Copies of any records or correspondence which supports his assertion that he conveyed to counsel his desire to file an appeal.

2.    A statement reciting any communications Petitioner had with counsel concerning Petitioner's instructions to counsel regarding an appeal. The statement must include a verbatim account of what Petitioner said to his attorney and

2

the exact responses from his attorney. The statement must recite the date and locations of any conversations that took place. Additionally, Petitioner must identify what efforts he made to ascertain whether his attorney had filed an appeal. Petitioner must explain when and why he first suspected that counsel had not filed an appeal. Such statement must be in affidavit form and/or sworn under penalty of perjury.[2]

If Petitioner fails to comply with the above directives the matter will proceed on the record before the Court.[3]

(ECF No. 79, at 1–2 (first alteration in original).) By Memorandum Order entered on May 18, 2023, the Court directed the Government to respond. (ECF No. 86.)[4] The Court noted that despite the February 6, 2023 Memorandum Order directing Muhammad "to file certain records and provide a sworn statement with respect to his claim that counsel failed to file an appeal, . . . [Muhammad] wholly failed to comply with the Court's directions." (*Id.* (citing ECF No. 79).) The Court further stated: "Accordingly, as warned in the Memorandum Order, the matter now proceeds on the record before the Court." (*Id.* at 1, n.1 (citing ECF No. 79).)

Subsequently, on June 29, 2023, Muhammad filed a Motion to Supplement, asking to add a claim based on *Dubin v. United States*, 143 S. Ct. 1557 (2023). (ECF No. 93.)

---

[2] An affidavit is a sworn statement of facts made on personal knowledge, and affidavits may be submitted by Petitioner or any other witnesses. There are two alternative ways to submit an affidavit to the Court, one of which must be followed. One way is for the person making the affidavit to sign the affidavit and swear to the truth of its contents before a notary public. The other way, which does not require a notary public, is for the person making the affidavit to sign the affidavit and certify that he or she signs under penalty of perjury and understands that he or she may be prosecuted if the facts he or she sets forth are untrue.

[3] The United States need not file a response until further order from the Court.

[4] Over a series of orders, the Court also directed Muhammad's former counsel, William Dunn, to provide a sworn statement addressing the specific allegations made by Muhammad in his § 2255 Motion. (ECF Nos. 88, 91.) Counsel complied with that directive. (ECF No. 98-1.)

The Government responded, asserting that Claims Seven, Eight and Nine qualify as procedurally defaulted and that the remaining claims lack merit. (ECF No. 98.)  Muhammad did not file a reply, rendering his § 2255 Motion ripe for review.

## II.    PERTINENT PROCEDURAL HISTORY

### A.    Guilty Plea Proceedings

On April 21, 2021, a grand jury charged Muhammad with one count of conspiracy to commit health care fraud (Count One); three counts of health care fraud (Count Two through Four); and two counts of aggravated identity theft (Counts Five and Six).  (ECF No. 2, at 1–11.)  Prior to trial, counsel moved to withdraw as counsel based on Muhammad's concerns about his representation.  (ECF No. 45.)  After hearing argument, the Court denied the motion to withdraw as counsel.  (ECF No. 53.)  One week before a jury trial was scheduled to begin, Muhammad pled guilty, pursuant to a written Plea Agreement, to Counts One and Five.  (ECF No. 56 ¶ 1.)  In his Plea Agreement, Muhammad agreed that the maximum sentence for Count One constituted ten years of incarceration and that the mandatory penalty for Count Five constituted two years of imprisonment consecutive to any other term of imprisonment received.  (*Id.*)  Muhammad agreed that he understood "that the Court has jurisdiction and authority to impose any sentence within the statutory maximum," any estimate he may have received from counsel "is a prediction, not a promise," and that the Court "may impose a sentence above or below the advisory sentencing range."  (*Id.* ¶ 5.)  Muhammad explicitly agreed that he understood that he could not "withdraw [his] guilty plea based upon the actual sentence."  (*Id.*)

With respect to restitution payments, Muhammad agreed that he understood that "restitution is mandatory," and "[w]ithout limiting the amount of restitution that the Court may impose, the parties agree that, at a minimum," Muhammad owed $544,067.60 to the Virginia

Department of Medical Assistance Services and $73,386.33 to North Carolina Medicaid. (*Id.*

¶ 15.) Muhammad signed the Plea Agreement at the end, showing that he had "read this Plea

Agreement and carefully reviewed every part of it with [his] attorney," and "unders[tood] this

agreement and voluntarily agree[d] to it." (*Id.* at 14.) Counsel also signed the agreement,

indicating that he had "carefully reviewed every part of this Plea Agreement with" Muhammad

and that, to his knowledge, Muhammad's decision to enter the plea was "informed and

voluntary." (*Id.*)

In the accompanying Statement of Facts, Muhammad "agree[d] that the allegations in

Counts One and Five of the Indictment and the following facts are true and correct, and that had

this matter proceeded to trial, the United States would have proven each of them beyond a

reasonable doubt." (ECF No. 57, at 1.) In particular, the Statement of Facts stated:

> 12.    At all times relevant to this Indictment, MALIK SALAAM
> MUHAMMAD a/k/a Michael Christian Pickett ("MUHAMMAD"), had attained
> a Ph.D in clinical psychology and was a licensed clinical psychologist in Virginia,
> North Carolina, Maryland, Georgia, Florida, and California. MUHAMMAD was
> an LMHP [Licensed Medical Health Professional] in Virginia.
> 13.    In or about May 2013, MUHAMMAD incorporated Elite
> Biobehavioral, LLC in Durham, North Carolina.
> 14.    Since at least September 2013, Elite Biobehavioral, LLC purported
> to provide psychological testing and outpatient psychotherapy services.
> 15.    In or about November 2013, MUHAMMAD enrolled Elite
> Biobehavioral, LLC as a Medicaid provider in Virginia.
> 16.    Conspirator 1 was a mental health professional residing in or near
> Richmond, Virginia. At all times relevant to this Indictment, Conspirator 1 was
> not a qualified as an LMHP or LMHP-R [Licensed Medical Health Professional
> resident] under the supervision of MUHAMMAD in Virginia.
> 17.    From in or about July 2015 through January 20, 2017, the exact
> dates being unknown, in the Eastern District of Virginia and elsewhere,
> Defendant MUHAMMAD SALAAM MUHAMMAD a/k/a Michael Christian
> Pickett, and Conspirator 1, knowingly and unlawfully combined, conspired,
> confederated, and agreed together and with each other to commit one or more of
> the following offenses against the United States, that is:
>> a) To knowingly devise and intend to devise a scheme and artifice
>> to defraud the Virginia Medical Assistance Program, a health care
>> benefit program as defined in Title 18, United States Code, Section

24(b), in connection with the delivery and payment for health care benefits, items, and services, in violation of 18 U.S.C. § 1347(a)(1) and;

b) To knowingly devise and intend to devise a scheme and artifice to defraud and to obtain by means of false and fraudulent pretenses, representations, and promises, any of the money and property owned by, and under the custody and control of the Virginia Medical Assistance Program, a health care benefit program as defined in Title 18, United States Code, Section 24(b), in connection with the delivery and payment for health care benefits, items, and services, in violation of 18 U.S.C. § 1347(a)(2).

## PURPOSE OF THE CONSPIRACY

18.     It was the purpose of the scheme and artifice to defraud for the defendant to unlawfully enrich himself through the submission of false and fraudulent Medicaid claims for outpatient psychotherapy sessions that were not actually provided and disallowed under the Medicaid regulations.

## THE SCHEME AND ARTIFICE

19.     In or about 2015, MUHAMMAD and Conspirator 1 became acquainted while working with Company A, a Medicaid provider of intensive in-home therapy ("IIH") in Richmond, Virginia.   Conspirator 1 provided IIH services to Medicaid recipients, while MUHAMMAD did some work with Company A.

20.     In or about May 2015, MUHAMMAD severed ties with Company A.

21.     In or about July 2015, MUHAMMAD contacted Conspirator 1 and asked Conspirator 1 to write false outpatient psychotherapy assessments and progress notes for him for Virginia Medicaid recipients.  Conspirator 1 agreed.

22.     In truth and fact, as MUHAMMAD well knew, Conspirator 1 did not provide outpatient psychotherapy services and instead fabricated psychotherapy assessments and progress notes reflecting sessions that did not actually occur.

23.     MUHAMMAD then used these false and fraudulent psychotherapy assessments and progress notes as the basis to cause false claims to be submitted to DMAS, which reflected services that were not actually rendered. DMAS then processed these claims and paid MUHAMMAD, through Elite Biobehavioral, LLC, accordingly.

24.     In addition, as MUHAMMAD well knew, Conspirator 1 was neither an LMHP or an LMHP-R under MUHAMMAD in Virginia and therefore was unqualified under Virginia regulations to provide outpatient therapy (if Conspirator 1 had been, in fact, providing it).

25.     MUHAMMAD also knew that Conspirator 1 continued to be a full-time employee at Company A at all relevant times to the conspiracy.

***Billing for Services Not Rendered***

26.     Starting in or about July 2015, MUHAMMAD agreed to pay Conspirator 1 a fee of approximately $30 per one-hour progress note reflecting an outpatient psychotherapy session.

27.     In or about August 2015, MUHAMMAD instructed Conspirator 1 to open a separate bank account in which MUHAMMAD could deposit these fees. On or about August 25, 2015, Conspirator 1 opened a separate bank account at Woodforest Bank for this purpose.

28.     Throughout the conspiracy, Conspirator 1, identified Medicaid recipients from his work at Company A and informed Muhammad that the recipients were available to be billed.

29.     Conspirator 1 then drafted false psychotherapy assessments and progress notes for outpatient therapy sessions for these Medicaid recipients that did not, in fact, occur.

30.     Throughout the conspiracy, Conspirator 1, located in the Eastern District of Virginia would regularly email fabricated psychotherapy assessments and progress notes on the identified Medicaid recipients to MUHAMMAD in North Carolina.

31.     Conspirator 1 drafted the fabricated psychotherapy assessments and progress notes to make it appear like MUHAMMAD actually had provided the services.  For example, Conspirator 1's name did not appear on the documents.

32.     Often these fabricated psychotherapy assessments and progress notes amounted to approximately 40 hours of purported work per week.

33.     MUHAMMAD did not participate in these psychotherapy assessments or outpatient therapy sessions because they did not, in fact, occur.

34.     MUHAMMAD and Conspirator 1 often had to adjust the false dates of service to reflect dates that they believed Medicaid would accept for billing.  For example, on or about September 4, 2016, MUHAMMAD and Conspirator 1 exchanged emails about billing for certain January 2016 Medicaid recipients.  MUHAMMAD wrote, "I just double checked.  I only think I can go back 60 days.  Sorry for the extra work.  I[f] you look and find something different let me know."  In response, Conspirator 1 wrote, "OK.  We can change the dates to make them applicable.  Ex January.  We will go back and say July then Feb to August.  We will get them all to fall within the past 60 day[s].  I gotcha."  MUHAMMAD replied, "Man cool.  Can you get that to me by tomorrow at the latest??!! Thank you[.]"

***"Back Billing"***

35.     MUHAMMAD and Conspirator 1 also believed that Medicaid would authorize claims for reimbursement for outpatient therapy for the six months that preceded Medicaid's approval of services for a recipient.

36.     As such, once Conspirator 1 identified a Medicaid recipient for MUHAMMAD to falsely bill Virginia Medicaid for outpatient therapy, Conspirator 1 would fabricate invoices and progress notes for MUHAMMAD to

bill Medicaid for the preceding six months of services. This enabled MUHAMMAD and Conspirator 1 to maximize the period of Medicaid billing.

37.     MUHAMMAD knew that Conspirator 1 was fabricating these invoices and progress notes.

38.     MUHAMMAD and Conspirator 1 called this practice "back billing."

### Termination of the Conspiracy

39.     On or about January 20, 2017, Conspirator 1 advised the Virginia Medicaid Fraud Control Unit about his conspiracy with MUHAMMAD and began to cooperate with law enforcement.

40.     Between in or about July 2015 and January 20, 2017, MUHAMMAD submitted at least $332,369.49 in psychotherapy and psychotherapy-related claims for reimbursement from Virginia Medicaid to which he was not entitled.

41.     After Conspirator 1 began to cooperate with law enforcement on or about January 20, 2017, MUHAMMAD continued to execute the scheme and artifice to defraud Medicaid.

42.     MUHAMMAD continued to knowingly and intentionally use Conspirator 1's false psychotherapy assessments and progress notes as the basis to cause false outpatient psychotherapy claims to be submitted to DMAS. DMAS then processed these claims and paid MUHAMMAD, through Elite Biobehavioral, LLC, accordingly,

43.     On or about February 27, 2017, Conspirator 1 called MUHAMMAD at the direction of law enforcement. In this call, Conspirator 1 expressed concern about their potential criminal liability for the scheme. MUHAMMAD told Conspirator 1, in part: "As long as I keep my mouth shut and you keep your mouth shut and don't nobody know what we are doing, I think we are okay."

44.     MUHAMMAD also continued to knowingly use Conspirator 1's psychotherapy assessments, and progress notes to "back bill" the six months preceding a Medicaid recipient's authorization of services.

45.     For example, on or about September 14, 2017, MUHAMMAD and Conspirator 1 had the following conversation via text message:

| | |
|---|---|
| MUHAMMAD: | Just deposited 1000. |
| MUHAMMAD: | Waiting for the back billing to come in. Been really slow. |
| Conspirator 1: | No worries. |
| Conspirator 1: | [winking emoji] |
| MUHAMMAD: | And the billing in March didn't pay (missed the 6 month window). |

46.     On or about October 13, 2017, Conspirator 1 severed ties with MUHAMMAD.

47.     Between in or about January 21, 2017 and October 13, 2017, MUHAMMAD submitted at least $211,698.20 in psychotherapy and psychotherapy-related claims for reimbursement from Virginia Medicaid to which he was not entitled.

48.     On or abut June 7, 2016, in the Eastern District of Virginia, defendant MALIK SALAAM MUHAMMAD, a/k/a Michael Christian Pickett, did knowingly transfer, possess and use, without lawful authority, a means of identification of another person, to wit: the name, date of birth, and insurance identification of Minor Victim #4 (L.V.), during and in relation to a violation of Title 18, United States Code, Section 1364, to wit: health care fraud. MUHAMMAD used the name, date of birth, and insurance identification number of Minor Victim #4 (L.V.) on a claim form seeking reimbursement, without lawful authority to do so. The submitted claim form reflects that on or about June 2, 2016, MUHAMMAD provided 60 minutes of outpatient psychotherapy to Minor Victim #4 (L.V.). In fact, this psychotherapy session never occurred and Conspirator 1 fabricated the supporting progress note. DMAS processed and paid this claim based on the use of Minor Victim #4 (L.V.)'s identifying information submitted by MUHAMMAD.

49.     The defendant engaged in the conduct described knowingly and willfully, and not because of accident, mistake, or other innocent reason.

(ECF No. 57, at 3–9 (first and second alteration added).)

At the bottom of the Statement of Facts, Muhammad acknowledged that "[a]fter consulting with my attorney . . . I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt." (*Id.* at 10.)

## B.     Sentencing

### 1.     Presentence Report and Objections

The Probation Office prepared a Presentence Investigation Report ("PSR," ECF No. 60). The Base Offense Level for Count One qualified as six;[5] however, because the loss exceeded $250,000, Muhammad received a twelve-level enhancement, and because he was an organizer, leader, manager or supervisor in the criminal activity, two additional levels were added. (*Id.* ¶¶ 23–26.) Probation later revised the PSR and added a two-level enhancement for abuse of

---

[5]     Count Five carried a term of imprisonment required by statute. (ECF No. 60 ¶ 33.)

position of trust or use of a special skill. (ECF No. 61 ¶ 27.) The PSR also recommended a two-level decrease, because Muhammad had accepted responsibility, and one-level decrease for assisting authorities and timely notifying authorities of his intention to plead guilty. (*Id.* ¶¶ 31–32.) Therefore, Muhammad's Total Offense Level constituted 19. (*Id.* ¶ 33.) With a Criminal History Category of I, Muhammad's guidelines range qualified as 30 to 37 months on Count One with a two-year mandatory consecutive sentence for Count Five. (*Id.* ¶ 63.)

Counsel objected to the PSR and argued that the two-level increase for Muhammad's role in the offense, and the increase for "abuse of trust," should not apply. (ECF No. 63, at 1.) Counsel also moved for a downward variance. (ECF No. 64.) In its Position on Sentencing, the Government indicated that despite the Government's assurance in the Plea Agreement that it would move for the third acceptance of responsibility point, "[a]t the plea colloquy, the Court advised the parties that it would not likely accept the Government's motion for the third point because of the late timing of the plea." (ECF No. 65, at 1 n.1.) The Government explained that if the third point was not applied, Muhammad's guidelines range would increase to 27 to 33 months. (*Id.*) The Government also agreed with counsel and objected to the application of the two-level role adjustment for being an organizer of the criminal activity and argued that it did not apply to Muhammad. (*Id.* at 3.) The Government argued that a midpoint sentence qualified as appropriate. (*Id.* at 12.)

Despite the Court indicating that Muhammad was probably not eligible for the additional one-level reduction for acceptance of responsibility, the Government filed a motion seeking that reduction, as it stated that it would in the Plea Agreement. (ECF No. 68.)

### 2.   Sentencing Hearing

During sentencing, the Court granted Muhammad's objection to the two-level increase for his role in the offense.  (ECF No. 76, at 4.)  The Court refused to apply the additional one-level reduction for acceptance of responsibility, because "as [it] said when the defendant pled guilty, even though the government filed a motion for a third point for acceptance, [it] do[es] not allow a third point when a defendant pleads guilty after a final pretrial conference, as [Muhammad] did."  (*Id.*)  The Court found that the Total Offense Level then constituted 18.  (*Id.*)  After the Court heard from the parties on whether the abuse of trust enhancement qualified as proper, the Court overruled Muhammad's objection and found that the two-level enhancement for abuse of trust was appropriate.  (*Id.* at 10.)  The Court noted that the final guidelines range was 27 to 33 months of incarceration.  (*Id.*)  Based on that finding, the Government argued for a midpoint sentence of 30 months for Count One.  (*Id.* at 22.)

The Court determined that a variance was not appropriate but concluded that Muhammad should be sentenced at the lower end of the guidelines, because Muhammad pled guilty.  (*Id.* at 27.)  The Court sentenced Muhammad to a total term of imprisonment of 52 months, consisting of 28 months on Count One with the mandatory two-year consecutive term of imprisonment for Count Five to follow.  (*Id.* at 39.)  The Court entered judgment on February 2, 2022.  (ECF No. 73.)  Muhammad filed no appeal.  On February 2, 2023, the Court received the present § 2255 Motion.

### III.   CLAIMS BARRED FROM REVIEW

The Government correctly asserts that Claims Seven, Eight and Nine are procedurally defaulted and barred from review here.  (ECF No. 98, at 12–14.)  The procedural default rule bars Claims Seven, Eight and Nine from review, absent a showing of cause and prejudice or

actual innocence, because Muhammad could have raised, but did not raise, these claims on direct

appeal. *Bousley v. United States*, 523 U.S. 614, 622–23 (1998); *United States v. Frady*, 456 U.S.

152, 167–68 (1982); *see Linder v. United States*, 552 F.3d 391, 397 (4th Cir. 2009) (explaining

that a petitioner who waives the right to appeal "is not precluded from filing a petition for

collateral review," but "is precluded from raising claims that are the sort that could have been

raised on appeal"). Muhammad offers no cause for his default of these claims or resulting

prejudice, and he does not otherwise demonstrate that actual innocence excuses his default.

Thus, Muhammad's Claims Seven, Eight and Nine are procedurally defaulted and barred from

review here. Accordingly, Muhammad's Claims Seven, Eight and Nine are DISMISSED.[6]

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

### A.    Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must first show

that counsel's representation qualified as deficient, and second, that the deficient performance

prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the

deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong

presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable

professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting

*Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective

---

[6]    Although Muhammad does not explicitly make the argument, counsel's failure to file an
appeal could potentially serve as cause for the default of his claims. Nevertheless, as discussed
below, counsel was not ineffective for failing to file an appeal, nor was Muhammad prejudiced.
Therefore, counsel's failure to file an appeal does not serve as cause for the default of Claims
Seven, Eight and Nine.

assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of *Strickland* to require the convicted defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### B.   Alleged Failure to File an Appeal (Claim One)

In Claim One, Muhammad alleges: "Ineffective assistance of counsel - failure to file an appeal. Counsel failed to file an appeal when requested to do so with regards to the sentencing enhancement, as well as the one (1) point reduction for accepting responsibility." (ECF No. 77 at 4.) In support, Muhammad vaguely suggests that he "requested that his attorney file an appeal. The issues addressed by the Petitioner to counsel were the one (1) point reduction under [United Sentencing Guidelines "U.S.S.G."] § 3E1.1 and the enhancement for abuse of trust added to [his] sentence during the sentencing phase of the proceeding." (ECF No. 78 at 5.) Muhammad then contends that counsel "had [a]n obligation to raise these issues during the appeal process whether he deemed the issues had merit or not; as well as, whether an appeal waiver precluded filing an appeal." (*Id.* (alteration in original).) As explained to Muhammad previously, these vague allegations "provide[] little more than the legal standard for an ineffective assistance claim." (ECF No. 79 at 1.) Despite the Court providing Muhammad with an opportunity to provide a sworn statement with details about how and when he "requested his attorney file an appeal" or other communications that supported this claim, he failed to file anything further. For this reason alone, Claim One fails. *Sanders v. United States*, 373 U.S. 1,

19 (1963) (finding denial of habeas relief appropriate where it "stated only bald legal conclusions with no supporting factual allegations").

But even if Muhammad had stated more than conclusory allegations, Claim One lacks merit. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). This determination must consider "all the information counsel knew or should have known." *Id.*

If the attorney received no express instruction to file a notice of appeal, and no consultation has occurred, a court must determine "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* at 478. The prejudice prong requires "that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Id.* at 484 (citations omitted).

If consultation about an appeal has occurred, counsel performs deficiently only by failing to follow the defendant's express instructions with respect to an appeal. *Id.* at 478.

Counsel avers that:

> I have independent recollection that I spoke by telephone with Muhammad while Muhammad was incarcerated at Pamunkey Regional Jail. On that call, I asked Muhammad whether he wished to not an appeal from the order pertaining to the sentencing hearing on 2/1/22, and he responded that he did not want to file an appeal.
>
> My independent recollection of this conversation is supported by entries in my work log. I maintain a log in marbled composition notebooks to record in my

14

own handwriting all notable work-related events for a specific day. My intent is to make entries into the log as events occur to assure accuracy.

My work log for 2/14/22 states: "Mon. 2/14 MM p/c client .33- does not want to appeal."

Additional support is found in the same call log at the entry for Sat 2/12/22 which states ".15 Muhammad p/c Pamunkey."

My reading of the two call log entries for 2/12/22 and 2/14/22 together means that I was not able to reach Muhammad at Pamunkey by phone on Saturday 2/12, and that I called him again on 2/14 and spoke to him directly about the appeal, and that Muhammad told me that he did not want to file an appeal. These log entries were entered many months before Muhammad first contended I had not filed an appeal as requested.

This conclusion is further supported by a document captioned "MM E-voucher" which I personally created and submitted to this Court for payment of my attorney's fees as court-appointed counsel in this case. The "MM E-voucher" contains an entry for 2/14/22 when the voucher was created- and paid- many months before Muhammad first contended that I had not filed an appeal as requested.

I state under oath that I spoke with Muhammad about an appeal before the time had expired to file a timely appeal, and that Muhammad told me that he did not want to file an appeal.

(ECF No 98-1, at 2–3.)

Thus, the uncontroverted record demonstrates that counsel consulted with Muhammad about an appeal and Muhammad explicitly indicated to counsel that he did not want to file an appeal. "[A]n attorney is under no obligation to file a notice of appeal where the defendant explicitly instructs his attorney not to file one." *United States v. Poindexter*, 492 F.3d 263, 268 (4th Cir. 2007) (citing *Flores-Ortega*, 528 U.S. at 477). Thus, a defendant, like Muhammad, "who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477 (citing *Jones v. Barnes*, 463 U.S. 741, 751 (1983)). Accordingly, Claim One lacks merit and will be DISMISSED.

### C.    Alleged Breach of the Plea Agreement (Claim Two)

In Claim Two Muhammad argues: "Ineffective assistance of counsel - counsel failed to object to the prosecutor's breach of the plea agreement." (ECF No. 77, at 5.) Muhammad "contends that the Government is in contravention of the terms set forth in the Plea Agreement; namely, exposure to further sentencing, no reduction pursuant to [U.S.S.G. §] 5K1, and no three (3) level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1." (ECF No. 78 at 7.) Muhammad faults counsel for "fail[ing] to object and failure to negotiate a more favorable outcome was deficient because the Plea Agreement is a legal binding contract." (*Id.*) As the record reflects, little discussion is needed here, because the Government did not breach the Plea Agreement. Thus, counsel was not deficient for failing to raise these objections, and Muhammad was not prejudiced.

In the Plea Agreement,

> The United States and the defendant agree that the defendant has assisted the government in the investigation and prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. If the defendant qualifies for a two-level decrease in offense level pursuant to U.S.S.G. § 3E1.1(a) and the offense level prior to the operation of that section is level 16 or greater, the government agrees to file, pursuant to U.S.S.G. § 3E1.1(b), a motion prior to, or at the time of, sentencing for an additional one-level decrease in the defendant's offense level.

(ECF No. 56 ¶ 5.) The Plea Agreement also stated that:

> The parties agree that the United States reserves the right to seek any departure from the applicable sentencing guidelines, pursuant to Section 5K1.1 of the Sentencing Guidelines and Policy Statements . . . if in its sole discretion, the United States determines that such a departure or reduction of sentence is appropriate. In addition, the defendant understands that the Court—not the United States—will decide what, if any, reduction in sentence is appropriate.
> Furthermore, the proceeding established by the Plea Agreement section titled Breach of the Plea Agreement and Remedies does not apply to the decision

of the United States whether to file a motion based on "substantial assistance" as that phrase is used in . . . Section 5K1.1 of the Sentencing Guidelines and Policy.

(*Id.* ¶ 12.)

With respect to Muhammad's claim that the Government breached the Plea Agreement by not moving for the additional one-level decrease for acceptance of responsibility, Muhammad's assertion is blatantly false. First, the Court made it abundantly clear during Muhammad's Rule 11 plea colloquy that it would probably not allow Muhammad to receive the additional one-level decrease for acceptance of responsibility. (*See* ECF No. 76 at 4.) Muhammad nevertheless decided to plead guilty with this knowledge. Moreover, despite the Court indicating that Muhammad stood doubtfully eligible for the additional one-level reduction for acceptance of responsibility, the Government filed a motion seeking that reduction, as it indicated it would in the Plea Agreement. (ECF No. 68.) Thus, the Government complied with its obligations under the Plea Agreement "to file, pursuant to U.S.S.G. § 3E1.1(b), a motion prior to, or at the time of, sentencing for an additional one-level decrease in the defendant's offense level." (ECF No. 56 ¶ 5.) Accordingly, Muhammad fails to show that the Government breached the Plea Agreement and counsel cannot be faulted for failing to raise this meritless objection.

Second, the Government never obligated itself to file a motion for a departure based on substantial assistance. Instead, not only did the Plea Agreement state that filing such a motion was within the Government's discretion, but that the section of the Plea Agreement pertaining to breaches specifically did not apply to the Government's decision whether to file a motion pursuant to U.S.S.G. 5K1.1. Once again, counsel was not obligated to make this meritless objection. Muhammad fails to show that counsel was deficient or any resulting prejudice, and Claim Two will be DISMISSED.

17

### D.     Failure to Investigate (Claim Three)

In Claim Three, Muhammad argues: "Ineffective assistance of counsel - counsel failed to investigate." (ECF No. 77, at 7.)  Muhammad faults counsel for "fail[ing] to investigate and interview Government witnesses [who] were intimidated by the Government because they were afraid of being deported," and had counsel requested an interview with these witnesses, "it would have determined that the witnesses were promise[d] in exchange for their cooperation with the Government." (ECF No. 78, at 9.)  Muhammad fails to identify who these witnesses were.  The Government indicates that it "believes Muhammad is referring to the parents of the children whose identities he stole to fraudulently bill Medicaid using their identifiers.  Many of these children came from Spanish-speaking families." (ECF No. 98, at 9.)  Muhammad fails to identify what information these interviews would have yielded that would have been exculpatory or how it would have aided his defense in any way.  Therefore, Muhammad demonstrates no deficiency of counsel or resulting prejudice.  *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner must provide "concrete evidence of what [the witness] would have testified to in exculpation"); *Bassette v. Thompson*, 915 F.2d 932, 941 (4th Cir. 1990) (dismissing claims where petitioner failed to make an adequate proffer of testimony of omitted witnesses).[7]

Second, Muhammad faults counsel for "fail[ing] to interview Petitioner's employees to determine if Petitioner had ever asked them to alter any billing" and had counsel "investigated this issue, he would have discovered that none of the employees altered any company records." (ECF No. 78 at 9.)  The Court fails to discern, and Muhammad fails to explain why counsel

---

[7]     The Court also heard argument about whether Muhammad should be able to question these potential witnesses about their immigration status or any efforts to deport them.  The Court ruled that Muhammad could only ask whether the witness was here illegally, whether the witness hoped to remain in the United States and whether the Government had made any efforts to deport him or her.  (ECF 38, at 1.)

should have interviewed Muhammad's employees.  The evidence established that Muhammad and Conspirator 1 created fake records to fraudulently bill Medicaid.  Whether or not his employees were aware of this, or whether Muhammad asked these employees to alter billing records, stands irrelevant to Muhammad's criminal conduct.  Thus, counsel cannot be faulted for failing to interview Muhammad's employees about altering company records.

Third, Muhammad argues that counsel failed to investigate whether the "larger companies comparable to Petitioner, which illegally charged Medicaid were given payment[] plans instead of criminal prosecution (selective prosecution)," and that this violates the Equal Protection Clause of the Fourteenth Amendment.  (*Id.*)  Muhammad's contentions are based entirely on speculation.  Once again, Muhammad fails to identify with specificity what these comparable companies might have been, and what pertinent information that counsel could have or would have elicited through an investigation that would have aided in his defense.  Muhammad fails to demonstrate any deficiency of counsel or resulting prejudice.  *Sanders*, 373 U.S. at 19.

Fourth, Muhammad faults counsel for "fail[ing] to investigate the dynamics of his so-called co-conspirator and the Government."  (ECF No. 78 at 8.)  Muhammad suggests that a criminal agent cannot conspire with a government agent or informant.  (*Id.*)  While that may be true, *see United States v. Hackley*, 662 F.3d 671, 679 (4th Cir. 2011), Muhammad and Conspirator 1 were engaged in a conspiracy for a year and a half before Conspirator 1 began to cooperate with the Government on January 20, 2017.  Thus, any argument by counsel that Muhammad was incorrectly charged with conspiracy because he was conspiring with a government agent would have been futile.  Therefore, Muhammad fails to show that counsel was deficient.

19

Finally, Muhammad fails to demonstrate any prejudice from counsel's alleged errors, because he fails to show, as he must, "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Accordingly, Muhammad demonstrates neither deficiency of counsel nor resulting prejudice based on counsel's failure to investigate, and Claim Three will be DISMISSED.

**E.    Motion to Suppress (Claim Four)**

In Claim Four, Muhammad argues: "Ineffective assistance of counsel - failure to file a motion to suppress recorded wire communications." (ECF No. 77, at 8.)  Muhammad suggests "that the Government did not use the wiretap as a last resort in their investigation, but as a routinely employed tactic to entrap the Petitioner. Attorney Dunn failed to investigate, failed to object, and failed to move the Court to suppress the wiretap evidence adduced by the Government," because "[a] thorough investigation would have revealed that the Government did not follow the procedures set forth in [the Wire and Electronic Communications Interception and Interception of Oral Communications ("WireTap Act")] Title 18 U.S.C.S. § 2510." (ECF No. 78 at 11.) Muhammad contends that "the wiretap was unlawful because the Government failed to utilize other less intrusive means of investigation available." (*Id.*) Finally, Muhammad argues that counsel should have moved "for a *Franks* hearing to determine the validity of the affidavit if a warrant was issued for a wiretap." (*Id.*) As discussed below, counsel cannot be faulted for failing to challenge the recorded conversations with Conspirator 1.

The Wiretap Act "generally prohibits the unauthorized interception of 'any wire, oral, or electronic communication.'" *United States v. Frink*, 328 F. App'x 183, 189 (4th Cir. 2009) (quoting 18 U.S.C. § 2511(1)(a)). As the Government explains, the recorded conversations were

not wiretaps pursuant to 18 U.S.C. § 2510 *et seq.* but were instead recorded communications between Muhammad and Conspirator 1, with the consent of Conspirator 1, who at the time, was working as a government agent. (ECF No. 98, at 10.) "Neither the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by government agents with the consent of one of the conversants." *United States v. Caceres*, 440 U.S. 741, 744 (1979) (citing *United States v. White*, 401 U.S. 745, 752 (1971); *Lopez v. United States*, 373 U.S. 427, 437–40 (1963)).[8] Thus, any challenge on the ground that Muhammad urges here would qualify as meritless.

Counsel also avers that "[t]he Government's evidence of Muhammad's guilt was more than sufficient even if such communications were excluded" and that "Muhammad elected to plead guilty." (ECF No. 98-1, at 3.) Thus, counsel clearly concluded that moving to suppress the recorded conversations between Muhammad and Conspirator 1 would qualify as futile. Accordingly, Muhammad fails to establish that counsel was deficient for not filing a motion to suppress or any resulting prejudice. Claim Four lacks merit and will be DISMISSED.

**F.    Failure to Introduce Mitigating Facts (Claim Five)**

In Claim Five, Muhammad argues: "Denial of effective assistance of counsel - counsel failed to introduce mitigating facts." (ECF No. 78 at 3.) Muhammad contends that "[d]uring the sentencing proceedings . . . , Attorney Dunn objected to the abuse of trust enhancement; however, Attorney Dunn failed to object to the 18 U.S.C. [§] 1028(A) for aggravated identity theft, which added an additional 24-months to his conviction." (*Id.* at 12.) Muhammad pled guilty to Count Five, i.e., aggravated identity theft. He agreed both that he was pleading guilty

---

[8]    The Wiretap Act specifically carves out an exception "for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given their prior consent to such interception." 18 U.S.C. § 2511(2)(c).

because he was indeed guilty of this crime, and that he understood that he would receive a *mandatory* two-year consecutive sentence for this crime. The Court accepted his guilty plea. To the extent that Muhammad wanted counsel to object at sentencing, counsel reasonably eschewed challenging Muhammad's guilt of aggravated identity theft at that time, because it would, at best, have had no impact, and at worst, may have seriously undermined Muhammad's guilty plea and the benefit that he received for acceptance of responsibility. Thus, counsel did not qualify as deficient, and Muhammad was not prejudiced.

Muhammad also vaguely suggests that counsel failed to introduce "[m]itigating [f]acts" that Muhammad "attempted to convince his co-conspirator not to get involved in illegal activity." (*Id.* at 13.) It is unclear if Muhammad wanted counsel to advance this argument prior to his guilty plea or at sentencing. Nevertheless, the record belies that contention. Muhammad agreed in the Statement of Facts accompanying his Plea Agreement that he enlisted Conspirator 1 to engage in health care fraud. Counsel cannot be faulted for refraining from advancing this baseless "fact." Claim Five lacks merit and will be DISMISSED.

### G. Failure to Investigate Loss Amount (Claim Six)

In Claim Six, Muhammad argued: "Denial of effective assistance of counsel - counsel failed to investigate loss amount." (*Id.* at 3.) In support, "Petitioner asserts that the dollar amount attributed to him was incorrect and Attorney Dunn did not do anything in the form of a challenge to the Government's assessment." (*Id.* at 13.) Muhammad argues that in the Indictment "restitution was listed at $350,000; however, during the plea process the restitution increased to $617,454.02, which is an amendment to the Indictment not authorized by clearly established federal law. Attorney Dunn's failure caused Petitioner to be exposed to a longer sentence." (*Id.* at 14.) Muhammad also argues that the Government's evidence "was insufficient

22

to support the loss stated in the Plea Agreement." (*Id.* at 15.) Muhammad clearly understood that the Plea Agreement held him liable for a restitution amount of $617,454.02, and he agreed that he was responsible for that amount when he entered his plea. *Cf. United States v. Lemaster,* 403 F.3d 216 (4th Cir. 2005) (explaining that "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"). If Muhammad did not agree to that amount, then he should have expressed concerns prior to the entry of his plea or he should have refused to plead guilty. Thus, Muhammad shows no deficiency of counsel. Moreover, Muhammad fails to demonstrate any prejudice from counsel's alleged errors, because he fails to show, as he must, "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59.

### V.    MOTION TO SUPPLEMENT

"Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v. Pittman,* 209 F.3d 314, 317 (4th Cir. 2000). In his Motion to Supplement, filed on June 29, 2023, Muhammad asked to add Claim Ten, a claim based on *Dubin v. United States,* 559 U.S. 110 (2023), (ECF No. 93), which was decided nearly a year and four months after he was convicted and sentenced.[9] Muhammad contends that *Dubin* requires a narrower interpretation of the crime of aggravated identity theft, and if his "counsel had a done a minimal level of case research he would have been able to present the argument that the aggravated charge against me had been objected to in other cases." (*Id.* at 1.) As discussed below, allowing Muhammad to add this claim would be futile.

---

[9]    The Government does not make any argument about the timeliness of this motion or whether *Dubin* applies retroactively.

In *Dubin*, the Petitioner challenged his conviction for aggravated identify theft under 18

U.S.C. § 1028A for overbilling Medicaid. 599 U.S. at 113. To be guilty of aggravated identify

theft, the Government was required to prove that Dubin "knowingly transfer[red], possesse[d], or

use[d], without lawful authority, a means of identification of another person or a false

identification document" "during and in relation to" a predicate offense. 18 U.S.C.

§ 1028A(a)(1). The Supreme Court held that:

> A defendant "uses" another person's means of identification "in relation to" a
> predicate offense when this use is at the crux of what makes the conduct criminal.
> To be clear, being at the crux of the criminality requires more than a causal
> relationship, such as "'facilitation'" of the offense or being a but-for cause of its
> "success." Instead, with fraud or deceit crimes like the one in this case, the means
> of identification specifically must be used in a manner that is fraudulent or
> deceptive. Such fraud or deceit going to identity can often be succinctly
> summarized as going to "who" is involved.

*Id.* at 131–32 (citation omitted). Dubin submitted claims for reimbursement to Medicaid that

overstated the qualifications of the provider who administered the test, who was only a licensed

psychological *associate*, and was not a licensed psychologist. *Id.* at 114–15. "This falsehood

inflated the amount of reimbursement." *Id.* at 114. Dubin argued that even though the claims

happened to include patients' Medicaid reimbursement numbers, he had not "use[d] another

person's means of identification 'in relation to'" the fraud for purposes of § 1028A(a)(1). *Id.* at

131. The Supreme Court vacated the conviction for aggravated identity theft, reasoning that

Dubin's

> use of the patient's name was not at the crux of what made the underlying
> overbilling fraudulent. The crux of the healthcare fraud was a misrepresentation
> about the qualifications of petitioner's employee. The patient's name was an
> ancillary feature of the billing method employed . . . . [P]etitioner's fraud was in
> misrepresenting *how* and *when* services were provided to a patient, not *who*
> received the services.

*Id.* at 132. Contrary to Muhammad's suggestion, *Dubin* stands inapposite to his case. Dubin provided psychological services to a real patient whose name was used on the reimbursement request. Dubin's crime consisted of "inflating the value of services actually provided," and then billing those larger reimbursement requests to Medicaid. *Id.* at 114. Here, by contrast, Muhammad stole the names and identities of Medicaid recipients who were not his patients and to whom he did not provide psychological services. The unauthorized use of these patients' identities was "at the crux of what ma[de]" Muhammad's conduct fraudulent and was not "merely an ancillary feature of a billing method." *Id.*[10] Thus, the decision in *Dubin* provides Muhammad with no relief. For that reason, allowing Muhammad to supplement his § 2255 Motion is futile. The Motion to Supplement (ECF No. 93) will be DENIED.

## VI.   CONCLUSION

For the foregoing reasons, Muhammad's claims will be DISMISSED. The § 2255 Motion (ECF No. 77) will be DENIED. The Motion to Supplement (ECF No. 93) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Petitioner.

/s/

David J. Novak
United States District Judge

Richmond, Virginia
Dated: July 2, 2024

---

[10]    Muhammad's actions are similar to an example given by the Supreme Court: "[T]ake the pharmacist who swipes information from the pharmacy's files and uses it to open a bank account in a patient's name. That 'misuse of th[e] means of identification' would be 'integral to' what made the conduct fraudulent, because misrepresentation about who was involved was at the crux of the fraud." *Dubin*, 599 U.S. at 118 (citing *United States v. Michael*, 882 F.3d 624, 629 (6th Cir. 2018)).